ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

DANIEL N. KASSABIAN (CABN 215249)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Tel:   (415) 436-7200
    Fax:  (415) 436-7234
    daniel.kassabian@usdoj.gov

Attorneys for United States of America

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>KEVIN MAUDIEL MARTINEZ-RIVAS,<br><br>    Defendant. | CASE NO. 3:23-CR-00369-CRB<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Date:   November 16, 2023<br>Time:  10:00 a.m.<br>Court:  Hon. Charles R. Breyer |

## I. SYNOPSIS

The United States requests that the Court accept the proposed Plea Agreement under Fed. R. Crim. P. 11(c)(1)(C). This case is part of the United States Attorney's Office's efforts to disrupt the fentanyl and methamphetamine open-air drug market that exists in San Francisco's Tenderloin District (the Tenderloin) through a combination of enforcement and dispositions that prevent drug traffickers from returning to it. These efforts will occasionally take the form, as here, of prosecution of street-level dealing where the defendant has limited criminal history, leading the United States to seek expedited prosecution, obtain a federal conviction, and enforce a strict three-year stay-away order that immediately excludes convicted drug traffickers from returning to the Tenderloin, and thus dissuades them from engaging in further drug trafficking. For the reasons set forth below, the United States and the

defendant believe that a below-Guidelines sentence—accounting for the time served plus one day in this expedited prosecution—alongside this geographical restriction meet the statutory requirements of 18 U.S.C. § 3553(a).

## II. MOTION FOR JOINT CHANGE OF PLEA AND SENTENCING

To advance the goal of this accelerated disposition, the parties jointly move the Court to proceed to sentencing without a presentence investigation report during the same hearing as the defendant's change of plea, or as shortly thereafter as is practicable.  This will achieve the expedited proceeding contemplated by both parties.  The Court may sentence without a presentence investigation report if it "finds that the information in the record enables it to meaningfully exercise its sentencing authority under 18 U.S.C. § 3553" and "explains its finding on the record."  Fed. R. Crim. P. 32(c)(1)(A)(ii); *see also* Fed. R. Crim. P. 32(b)(1), U.S.S.G. §6A1.1, Crim. L. R. 32-1(b).  The government respectfully submits that the record here—the Criminal Complaint, the Information, the Plea Agreement, and the parties' sentencing memoranda, all detailing the defendant's offense conduct and other factors relevant under § 3553—enable the Court to meaningfully exercise its sentencing authority under § 3553 and proceed to sentencing without the need for a presentence investigation report.  The parties request that the Court explain its findings and the sufficiency of the record at time of sentence.

## III. APPLICABLE GUIDELINES RANGE AND CRIMINAL HISTORY CATEGORY

The government calculates the following Guidelines range:

a. Base Offense Level, U.S.S.G. §2D1.1(a)(5), (c)(6):     28
Defendant possessed between 700 KG and 1,000 KG of Converted Drug Weight.[1]

b. Zero Point Offender Adjustment: U.S.S.G. § 4C1.1     -2

c. Acceptance of Responsibility, U.S.S.G. §3E1.1:     - 3

d. Adjusted Offense Level:     23

The government calculates a Criminal History Category (CHC) of I (0 points).[2]

---

[1] This is based on the approximate (gross) weights in the Plea Agreement and using the U.S.S.C.'s online calculator (https://guidelines.ussc.gov/apex/r/ussc_apex/guidelinesapp/drug-conversion .

[2] The government has reviewed and produced in discovery the criminal history report for the defendant available through the National Crime Information Center, a criminal records database.  That report reflects that the defendant had seven drug-related arrests but no prior criminal convictions.

An Adjusted Offense Level of 23 and a CHC I result in a Guidelines range of 46 to 57 months.

The government also seeks a three-year term of supervised release (as required by statute), imposition of the $100 mandatory special assessment, and forfeiture of cash and a cell phone seized from the defendant when he was arrested.

## IV.   SENTENCING RECOMMENDATION

The government requests a sentence of time served plus one day and a three-year term of supervised release that includes a special condition that the defendant may not re-enter the Tenderloin during the period of supervised release.  This stay-away condition is a critical component of the plea bargain because it prevents the defendant from returning to the Tenderloin, from where the defendant's conviction for drug trafficking arises.

### A.   Section 3553 Factors

#### 1. *Nature and circumstances of the offense and history and characteristics of the defendant*

The defendant is a 20-year old male who was born in Honduras.  According to the Department of Homeland Security, the defendant lacks immigration status and/or is removable under U.S. immigration law.  There is an immigration detainer in place such that the government expects that the defendant will be transferred to the custody of the Department of Homeland Security for removal proceedings following her release from the custody of the U.S. Marshals.  To the government's knowledge, the defendant has no prior criminal convictions, placing him in a CHC I.

On or about October 11, 2023, in the Tenderloin in the vicinity of Market Street and 7th Street, the defendant possessed with intent to distribute: methamphetamine weighing approximately 76.8 grams; fentanyl weighing approximately 316.1 grams; and cocaine base weighing approximately 10.1 grams.  The defendant knew those substances were controlled substances and that it was illegal to possess them with the intent to distribute.  He also possessed one Motorola cellular phone, and $695 of U.S. currency that facilitated drug sales and were drug sale proceeds.  Prior to his arrest on or about October 11, 2023, the defendant had engaged in at least two drug transactions that day, during which he sold a portion of the controlled substances in his possession to two other individuals in exchange for U.S. currency.

After his arrest, the defendant agreed to remain in custody during the pendency of this case. He was arraigned on an information alleging possession of methamphetamine. In the Plea Agreement, the defendant acknowledges that he knew the substances in her possession were methamphetamine, fentanyl, and cocaine base, and that he possessed the substances intending to distribute them to other individuals. In the Plea Agreement, he also admits to possessing methamphetamine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) and acknowledges that a conviction in this case "makes it practically inevitable and a virtual certainty that [he] will be removed or deported from the United States."

### 2. *Need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant*

The Tenderloin, defined in the Plea Agreement to include the historic Tenderloin District and much of the South of Market neighborhood, is in crisis. As the Court is well aware given where this courthouse is situated and in view of other cases, the proliferation of highly addictive, potent, and inexpensive synthetic controlled substances like fentanyl and methamphetamine has exacted a crushing human toll in the Tenderloin. The Tenderloin open-air drug market not only creates suffering for its participants—including a staggering number of overdoses and fatalities—but also dire externalities for the people and families that live and work in the Tenderloin, and the rest of San Francisco. The effects of the defendant's offense, considered as an individual act, is destructive; the effects of the offense, considered in the aggregate, are catastrophic.

Unsurprisingly, given the relevant conduct and amount of controlled substances the defendant possessed, the adjusted Guidelines range for the defendant's conduct is 46 to 57 months. The defendant has no criminal history. The proposed sentence—of time served plus one day and a three-year term of supervised release with a highly-restrictive geographic restriction—is a downward variance from the Guidelines range, but one that the government submits is appropriate given the defendant's conduct and criminal history, the unique problem the Tenderloin faces, and the need for deterrence and protection of the public.

In order for the government to agree to this disposition, the defendant waived detention and has been in continuous custody since his arrest; he also has agreed to promptly pleaded guilty and proceeded

to sentencing (including waiving indictment) within weeks of arrest; the defendant also agreed to be subject to a three-year term of supervised release that includes a strict stay-away condition from the Tenderloin. The defendant is on notice that a return to the Tenderloin (in violation of the defendant's supervised release terms) will invite new charges or supervised release violations.

This disposition results in a drug trafficking conviction within weeks of arrest (not months or years), immediate separation of the defendant from the Tenderloin, and prevention of the defendant from returning to the Tenderloin. The speed at which this case moved will free up other government resources to prosecute additional federal crimes, including in the Tenderloin.

B.     **The Necessity Of The Proposed Supervised Release Special Conditions**

A three-year term of supervised release is required by statute for the drug-trafficking offense to which the defendant has agreed to plead guilty, 21 U.S.C. § 841(a)(1) and (b)(1)(C), and it is essential to this disposition. In particular, the special stay-away condition of release allows the government to accomplish one of its primary goals of protection of the public: to immediately separate drug traffickers from the Tenderloin (given the defendant has remained in custody from the time of arrest) and to effect a strict stay-away from the Tenderloin for three years. Under the terms of supervised release as contemplated herein, not only will the defendant be prohibited from engaging in any further unlawful conduct, but the defendant will be prohibited from entering the Tenderloin without prior approval by U.S. Probation:

> Unless authorized by U.S. Probation, the defendant shall neither enter nor be present in the area in San Francisco bordered on the west by Van Ness Avenue, on the north by Geary Street, on the east by Powell Street and 3rd Street, and on the south by Howard Street.

Combined with a suspicionless search condition, to which the parties have also agreed, that the § 3553(a) considerations of protection of the public and meaningful deterrence will be significantly advanced by the terms of this agreement, and this prosecution's impact on illicit drug trafficking in the Tenderloin will be both immediate and sustained. The stay-away condition is also necessary given the unique circumstances of Tenderloin drug trafficking, where the Court has repeatedly encountered recidivism from previously sentenced defendants, including those who have been removed from the country but who nonetheless returned to sell controlled substances in the Tenderloin. *See, e.g., United*

*States v. Luis Almicar Erazo-Centeno*, 3:23-cr-00002-CRB; *United States v. Gamez-Arguilio*, 3:17-CR-00553-CRB.

On the facts of this particular case, under the § 3553(a) factors and given the provisions of the Plea Agreement, the government respectfully submits that the contemplated disposition here is sufficient but not greater than necessary to accomplish the goals of § 3553(a).

**V.   CONCLUSION**

For the above reasons, the government recommends that the Court sentence the defendant to a sentence of time served plus one day, to be followed by a term of supervised release of three years and the special conditions agreed to by the parties in the Plea Agreement, including the stay-away condition.

DATED: November 9, 2023                                   Respectfully Submitted,

ISMAIL J. RAMSEY
United States Attorney

         /s/
DANIEL N. KASSABIAN
Assistant United States Attorney

2063-9398-4001, v. 1